**AUTOMOBILE MECHANICS, LOCAL 701 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**HOLIDAY OLDSMOBILE, an Illinois corporation, Defendant.**

**No. 72 C 1420.**

United States District Court,
N. D. Illinois, E. D.

Nov. 17, 1972.

Stuart N. Litwin, Chicago, Ill., for plaintiff.

Karl W. Grabemann, Steven H. Adelman, Price, Cushman, Keck & Mahin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

*Motion For Summary Judgment*

MAROVITZ, District Judge.

### I.

Plaintiff, Automobile Mechanics, Local 701, International Association of Machinists and Aerospace Workers, AFL–CIO (Union) and defendant, Holiday Oldsmobile (Holiday) were parties to a collective bargaining agreement which became effective on November 1, 1969.

The wage provision of the November 1, 1969 to October 30, 1972 contract changed the method of compensation for the employees in the body and paint shop from what was known as the 50–50 basis, in effect from 1966 to 1969, to a method whereby the employees were to be paid a set wage per each hour that it was estimated it would take the employees to repair the particular damaged vehicle.

We do not wish to elaborate on the specific mechanics and complex mathematics of the 50–50, the divide-by-factory (d. b. f.), and other methods of body shop compensation used, in view of the fact that the Arbitrator's findings in this case (Exhibit B, Plaintiff's complaint) more than adequately describes these methods. Shortly after the November 1, 1969 contract went into effect the Union notified Holiday that the employees were being improperly compensated under the contract. After almost a year of efforts at conciliation a grievance was filed with Holiday and the case proceeded to the binding arbitration provided for under Article VIII of the agreement.

On December 17, 1971 the Arbitrator found that the body shop employees had been improperly compensated and ordered Holiday to pay the employees their lost wages. The amount to be paid was to be resolved by Holiday and the Union with the stipulation that the Arbitrator would decide the amount of back pay if the parties failed to agree. Holiday and the Union were not able to come to terms, the Arbitrator reconvened the hearing, and on April 7, 1972 ruled that the employees were entitled to damages in the amount of $12,432.00 covering the improperly compensated period of December 1, 1969 to October 14, 1970. Holiday failed to comply with the Arbitrator's award and consequently plaintiff brought this suit to enforce the award.

The case is presently before this Court on cross motions for Summary Judgment.

Defendant seeks summary judgment in its favor on the grounds that: 1) the Arbitrator's refusal to postpone the hearing for March 18, 1972 although, Holiday's Manager, Edward Farrell, requested him to do so because he was scheduled to be out of the country was misconduct requiring his April 7, 1972 award to be vacated pursuant to 9 U.S. C. § 10(c); that the Arbitrator exceeded the scope of his authority by awarding damages for a period prior to October 2, 1970, by using an improper formula in determining damages and by rendering his award 90 days after the filing of the complaint.

Plaintiff's motion for summary judgment is based primarily on contentions the converse of those raised by defendant in its motion and there is a great deal of interplay between the briefs filed in support, in opposition and in reply to the respective motions all addressing themselves to the same dispositive issues. Consequently the two motions and their accompanying briefs are best treated as a whole and will be dealt with jointly.

## II.

Holiday in its motion claims that the Arbitrator was guilty of misconduct in refusing to postpone the hearing of March 18, 1972 upon sufficient cause shown. Following the failure of the parties to reach a damage figure under the December 17, 1971 Award the Union requested an additional hearing, a contingency provided for in the December award. The hearing was granted and was set for March 13, 1972, the Arbitrator stating at the time that "No continuances will be granted inasmuch as I will be unavailable except for the aforementioned date until the middle of November" (R–405). Despite this predilection against postponement, the March 13th date was changed to Saturday, March 18, 1972 to accommodate Mr. Farrell, General Manager of Holiday, who stated that he could not appear at the earlier date. In a letter to the Arbitrator dated March 14, 1972 Mr. Farrell stated that

he could not appear on March 18, 1972 because he had to be out of the country. The Arbitrator did not receive the letter until March 18th, the morning of the hearing. Mr. Peters, Farrell's attorney requested another continuance at the hearing on March 18th. The Arbitrator refused to delay the hearing any further stating that he would be engaged in other arbitration matters for quite some time and would after that be out of the country. Defendant claims that this denial of a continuance constituted misconduct on the part of the Arbitrator since had Farrell been present he would have explained that the grievance only involved a period subsequent to October 2, 1970, that the grievance had not been damaged by the compensation method used by the company and that he would have guaranteed that the company would cooperate in the future.

We have examined the affidavits, the various documents and the transcript of the hearing on March 18, 1972 and find no merit to defendant's contention that the continuance was improperly denied. Farrell on previous occasions had inconvenienced both the Arbitrator and plaintiff's attorneys. It was not until the morning of the hearing that the Arbitrator became aware of the fact that yet another delay was being requested, as it turns out so that Farrell might have a brief vacation. Considering the foregoing we believe that it was completely within the Arbitrator's discretion considering his own prior commitments, his expressed desire to avoid *any* continuances and his previous flexibility in granting continuances to refuse to allow one individual to cause any further delay in the proceedings. A continuance, in view of the Arbitrator's schedule, would be tantamount to an 8-month delay and so great an inconvenience to the other parties involved, including the employees who were awaiting their back pay, simply to accommodate one individual, the necessity of whose presence is itself doubtful, would be wholly unjustified.

Indeed Farrell never informed the Arbitrator that he wished to be present to offer certain defenses, there were other parties who could have spoken for Farrell; and he was represented by counsel who could have just as easily communicated Farrell's information.

Finally, we find that defendant was not in any way prejudiced by Farrell's absence. The alleged oral agreement that Farrell states he would have raised had he testified, between plaintiff and defendant to utilize a 50–50 basis which would render the Union's grievance applicable only to the two week period when it employed the improper d. b. f. method is of no interest at this point since, as will become evident subsequently, the issue of what period the grievance covered was already decided in the December 17, 1972 award. Neither was Farrell's presence necessary to ensure that a correct formula would be used since all that was needed was simply the tendering of certain estimate forms, not his appearance. In the same vein, Farrell's attorney without Farrell's presence could have conveyed his desire to cooperate in the future.

We find the Arbitrator's refusal to grant a continuance to have been proper conduct and not grounds for vacating the award.

### III.

Defendant further contends that the Arbitrator exceeded his powers by awarding back pay for a period starting December 1, 1969 and ending October 14, 1970 since the grievance submitted to arbitration did not involve the period prior to October 2, 1970. Defendant bases this contention on the assertion that from December 1969 to October 2, 1970 the company paid its body and paint shop men in accordance with an *oral* agreement entered into by the employees and their Union. After October 2, 1970 defendant claims that pursuant to the Union's request Holiday began compensating its employees in accordance with the November 1, 1969 agreement which led to the filing of a grievance by the Union alleging that the post-October 2, 1970 method of compensation was improper. Thus it is this two week period, October 2, 1970 to October 14, 1970 that defendant argues is the only period within the scope of arbitration.

Defendant buttresses this argument by citing Article VIII of the agreement which requires an employee to present his grievance to the company within thirty days for the complaint to be valid. Defendant interprets this provision as meaning that grievances submitted for arbitration cannot involve a period prior to 30 days before the filing of the grievance.

We find that the existence of an oral agreement from December 1969 to October 2, 1970, if indeed it exists, is irrelevant at this juncture. The defense of an oral agreement to maintain the 50–50 basis despite the November 1, 1969 collective bargaining agreement was never raised before the Arbitrator or at any time prior to this suit and it would do violence to the entire concept of binding arbitration if we were to permit late-blooming defenses or suddenly recollected refutations to be raised at such a late date. The issue of an oral agreement not having been raised by defendant before the Arbitrator it cannot now raise that defense. Mogge v. District 8, I.A.M., 454 F.2d 510 (7th Cir. 1971).

Neither do we find any merit to defendant's contention that any award for a period prior to 30 days before October 14, 1971 was improper. Defendant raised this interpretation before the Arbitrator who rejected it stating:

There is nothing in Article VIII's language that, directly or implicitly, would lead to a finding that a make-whole period for a contract violation must be limited to 30 days. True a complaint must be made within 30 days of the occurrence that spawned the complaint. But the complaint that is so made and timed can be oral; it

does not have to be couched in writing. And if perchance the grievance does ultimately get into written form, as here, after the end of said 30 days and the dispute is not settled by the time the written complaint is filed, the liability period still begins with the date of the occurrence and can run up to the date of filing the writing. In other words, the first complaint date, whether oral or written, must be presented not later than 30 days past the occurrence date; but if said first complaint involves only mouthing, the written version can be later, very much later, or never. The written grievance version date may be used to set the ending date of the damages period but has nothing to do with determining the start date thereof.

The record establishes beyond doubt that (1) the Company failed from the first effective date of the Agreement (December 1, 1969) to comply with its wage rate requirements; and (2) both the employees and their Union during the first month (December, 1969) of the new Agreement's life orally protested to the Company the latter's mispayment methods. In so doing they complied with the Agreement's Step One time limit provisions; and in so complying they set the starting date for the make-whole period. The Arbitrator has no proper alternative to finding that such starting date is and must be December 1, 1969. As already stated, the ending of the damages period is and must be October 14, 1970.

■ We find no reason whatsoever to disturb the Arbitrator's finding in this regard. His interpretation and findings were what the parties bargained for and the defendant having been adversely effected cannot now belatedly retract his consent to the binding arbitration.

The Arbitrator's finding that the 30-day provision in the contract does not prevent the make-whole period from starting in December of 1969 is a well reasoned and logical one, a decision we might add that this Court itself would

have reached were we attempting to independently interpret the contract had the case not gone the route of binding arbitration.

Lastly we find that plaintiff did properly grieve the 50–50 basis as well as the d. b. f. method and consequently defendant cannot seek to limit the make-whole period only to the time that the d. b. f. method alone was being used.

### IV.

■ Defendant further argues that the Arbitrator used an improper method of computing the April 7, 1972 award and should have based his decision on an examination of the labor estimate records rather than on estimates as to the wages lost during the period the employees were being improperly compensated. In examining the Arbitrator's April 7, 1972 Award and the circumstances leading to his choice of remedies we find that he was well within the scope of his powers in using the disputed formula. The Arbitrator while indicating that reference to the estimate forms would be the most direct method of determining the amount of the award interjected the caveat that this was no ordinary case stating:

Unfortunately this case is not an ordinary one. In the light of previous resistances by this particular employer the Arbitrator cannot be sure that said method could or would be effective and such result could or would be obtained. It is not even clear to the Arbitrator that the necessary records still exist or are still in possession of the company. (April 7, 1972 Award pp. 6–7)

Based upon the circumstantial inability to utilize the estimate form method of computation the Arbitrator used a formula which approached very closely the result that would have been produced had the former method been used. We find that the Arbitrator was justified in his choice of remedies and did not exceed his powers in using the formula he applied given the facts in this case and

given the latitude and flexibility that must be permitted Arbitrators if they are to arrive at just solutions in all cases.

### V.

■ Defendant also seeks to have the award vacated on the grounds that it was rendered after 90 days. The grievance procedure in the collective bargaining agreement requires a decision to be handed down not later than 90 days from the established date of the complaint.

The April 7, 1972 award was rendered more than a year and a half later.

We find that defendant waived its objection by participating in the March 18, 1972 hearing and by indicating in the weeks prior to the March 18th hearing that it would participate. At no time did defendant give any indication that it would compel adherence to the 90 day provision. In addition the defendant did not assert this defense to the Arbitrator and waited until there was a ruling adverse to its interests before it groped for extraneous defenses to vacate the April 7, 1972 award. The 90 day period had been exceeded at point some time before the December 17, 1971 and certainly the March 18, 1972 hearing and if defendant seriously objected to the delay he had more than ample opportunity to voice his objections even before the 1971 award or before the 1972 award. Defendant cannot come at this late date and assert an objection that it quite obviously waived.

### VI.

Our decision to uphold the Arbitrator's Award is as much based upon our view of the function of arbitration as it is on the particular facts in this case.

Our approach to this case is therefore tempered with a wholly justified reluctance to disturb an Arbitrator's findings. Indeed the Supreme Court on various occasions has enunciated that the scope of review by Courts of Arbitrator's awards is a very limited one. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ In Mogge v. District 8, International Association of Machinists, 454 F. 2d 510 (7th Cir. 1971) the Court of Appeals in this Circuit in upholding an Arbitrator's award reiterated the position that Courts ought to be wary of disturbing Arbitrators' decisions.

If indeed the role of arbitration is not to be converted into a "take it or leave it" basis where every party who sustains an adverse decision decides to "leave it" and immediately scurries to the Courts thereby prolonging the dispute involved, we must avoid interfering with the arbitration absent a capricious and unjustified finding.

In the action before us we have found the Arbitrator's conduct both substantively and procedurally to be wholly justified and warranted and both his remedy and period for which that remedy applies to be proper.

Consequently we uphold the Arbitrator's April 7, 1972 Award for $12,432.00 covering the improperly compensated period of December 1, 1969 to October 14, 1970 and order defendant to pay the employees their respective shares of this amount.