**TRUCK DRIVERS, CHAUFFEURS AND HELPERS, LOCAL UNION 100, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,**

v.

**LIQUID CARBONIC CORP., Defendant.**

No. C–1–82–1241.

United States District Court,
S.D. Ohio, W.D.

April 27, 1983.

John R. Doll, Dayton, Ohio, for plaintiff.

J. Alan Lips, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter is before the Court for consideration of a motion for summary judgment filed by defendant (doc. 10), plaintiff's response (doc. 17) and defendant's reply (doc. 21). This action was filed under the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 141 *et seq.,* for enforcement of an arbitration award under 9 U.S.C. § 9. Plaintiff thereafter filed a motion for a preliminary injunction asking this Court to reinstate grievant, Harlan Pugh, pending the outcome of this litigation. Defendant filed its memorandum in opposition to the motion for a preliminary injunction and at the same time filed this motion for summary judgment. A hearing on the motion for summary judgment was held on April 20, 1983. For the reasons set forth below we find that defendant's motion is well-taken and should be granted.

The facts giving rise to this dispute are as follows. Defendant Liquid Carbonic Corporation (Company) operates a facility in Cincinnati, Ohio. At this facility the Company fills steel containers commonly known as cylinders with high pressure industrial and medical gases and distributes these cylinders. Truck drivers working out of the Cincinnati facility are represented by plaintiff, Teamsters Local 100. The Company and Teamsters Local 100 were parties to a collective bargaining agreement effective August 1, 1979 through July 31, 1982.

Harlan Pugh, a grievant herein, was a truck driver for the Company's Cincinnati operation and a member of the bargaining unit represented by Teamsters Local 100. Pugh was laid off for lack of work in November of 1980 and remained on lay-off status until May 4, 1981, when he was recalled to work as vacation relief. Pugh was discharged from his employment with the Company on May 29, 1981 for his refusal to cross a picket line. A grievance protesting his discharge was filed on May 30, 1981.

Shortly after Pugh's discharge, on June 4, 1981, defendant's Cincinnati plant manager posted a notice to employees which stated:

Cryogenic operations from the Cincinnati shipping point will be suspended effective 15 June 1981. In the foreseeable future, bulk deliveries will be staged out of Liquid Carbonic Corporation—Dayton, Ohio. Drivers who are interested in transferring employment to that location should apply through R.J. Shulin at West Lake or Dayton, Ohio.

The only Cincinnati truck driver who expressed an interest to the Company concerning employment in Dayton was a man named Carl Hopkins. Hopkins applied for and was granted a transfer to Dayton. Three truck drivers from another one of defendant's operations located in Findlay, Ohio also requested and were granted transfers to Dayton. The operation in Dayton then was opened with these four employees. Teamsters Local 654, the bargaining unit which had been recognized by the Company as the representative of the employees at its Findlay, Ohio operation was recognized as the bargaining unit for the employees at the Dayton, Ohio facility. Since June of 1981, a number of other employees have been hired by defendant at its Dayton, Ohio operation. These employees all are represented by Teamsters Local No. 654.

On October 27, 1981 Harlan Pugh's grievance was heard by arbitrator Lynn B. Griffith, Jr. There was no testimony presented nor any discussion at the hearing with respect to Pugh's possible reinstatement or transfer to the Company's Dayton operation. Neither Company's Dayton operation nor its contract with Teamsters Local 654 were even mentioned at the hearing.

Arbitrator Griffith issued his award on February 11, 1982, in which he stated:

The grievance of Harlan Fred Pugh is allowed, and he is reinstated to his employment with all seniority and rights subject to suspension for thirty days, and the back pay to be reduced by any unemployment compensation or earnings during the interim.

The Company reinstated Pugh to the same employment status he had at the time of his discharge in accordance with the award. However, since all of the truck drivers working at the time of the award were more senior than Pugh and there was no job available for Pugh, he was placed on lay-off status and told that he would be recalled when work became available.

In a letter to Robert McCarthy, Cincinnati plant manager, dated February 23, 1982 Pugh for the first time requested that he be transferred to Dayton, Ohio. The Company denied this request. Neither Pugh nor the Union filed a grievance regarding the Company's denial of the request.

The Company took the position that Pugh was not entitled to any back pay as a result of the Griffith award because he would have been on lay-off status during the period that he was off work after his thirty day suspension. Teamsters' 100 attorney talked with the attorney for defendant regarding the issue of the amount of back pay owed to Pugh. Because the parties were in disagreement regarding the issue, the attorneys

agreed to remand the matter to the arbitrator to resolve the question whether any back pay was owing. There is a disputed question of fact raised by affidavits submitted by the attorneys for both parties whether the attorneys also agreed to submit to the arbitrator the question whether Pugh was entitled to be transferred to Dayton, Ohio. When the second hearing was called on September 9, 1982, however, and the attorney for the Union attempted to submit the question of transfer to the arbitrator, the attorney for the Company refused to go forward with this issue on the grounds that it was not properly before the arbitrator. As a result of the disagreement over this issue the entire hearing was cancelled.

Plaintiff then filed this suit asking the Court to order defendant to "fully comply with the award of arbitrator Griffith" by "reinstating the Grievant pursuant to the terms of the award." Plaintiff argues that because there is no work available in Cincinnati, the Company must provide a job for Grievant in its Dayton, Ohio facility.

Defendant argues three grounds in support of its motion for summary judgment:

1. Defendant has fully complied with the award of the arbitrator;

2. Neither the Court nor the arbitrator has authority or jurisdiction to order reinstatement or transfer of Harlan Pugh to defendant's Dayton operation; and

3. The Court is without jurisdiction because plaintiff has failed to exhaust its contractual remedies.

The narrow question which we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered only to determine whether there are issues to be tried. 10 Wright & Miller, *Federal Practice and Procedures: Civil*, § 2712 at 379 (1973). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979) (emphasis original). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63.

Applying the above standard, we find that defendant is entitled to judgment as a matter of law.

■ First, we find that defendant has complied with the arbitration award. Pugh has been reinstated to the exact same position he would be in if there never had been a discharge. The fact that he is on lay-off status is not the fault of the company. There is no one with less seniority than plaintiff working at the Cincinnati facility and there are drivers with more seniority than plaintiff who are out of work in Cincinnati. It is certainly not within the province of this Court or a labor arbitrator to order the Company to rehire Pugh in Cincinnati ahead of persons with more seniority. Such an order would require the Company to violate its labor agreement with Local 100.

Plaintiff argues, however, that defendant has not complied with the arbitration award. Plaintiff asserts that because the collective bargaining agreement gives Pugh the right to be treated in the same manner as all other employees, and because all Cincinnati employees who applied for a transfer to Dayton were given a transfer, the language in the arbitration award that Pugh is to be reinstated to his employment *with all rights,* gives Pugh the right to be transferred to Dayton. We disagree.

■ The question whether Pugh was entitled to be transferred to the Dayton, Ohio facility never was before the arbitrator. In fact, Pugh did not apply for a transfer until after the arbitrator issued his decision. Clearly, therefore, the arbitrator did not and could not have ruled on this question. His order requiring reinstatement applied to reinstatement at the Cincinnati facility only. We believe that it would stretch the

arbitration award beyond recognition for this Court to rule that the essence of the award requires the Company to provide Pugh with a job in Dayton, Ohio. The question whether Pugh is so entitled remains unresolved.

Further, even if the issue had been presented to the arbitrator, we do not believe that there is any evidence in the record sufficient to sustain a finding that Pugh had a right to be transferred to Dayton, Ohio. There is no dispute over the fact that no agreement was entered into between the Company and Local 100 regarding the transfer rights of any Cincinnati employees to the Dayton, Ohio facility. The Company invited employees to apply for a transfer but there was no guarantee that the transfer would be granted in all cases. The fact that the only Cincinnati employee who applied for a transfer was granted a transfer does not create a right on the part of all employees to be transferred to Dayton. Pugh's contractual right to be treated in the same way as all other employees was honored. He was given the same right as all other employees to request a transfer. An arbitration award "is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Because there is nothing in the collective bargaining agreement that guarantees the Cincinnati employees' jobs if work is transferred to another company facility, any arbitration award that would have included an order for Pugh to be transferred to Dayton would have gone far beyond the bounds of the collective bargaining agreement and would be invalid.

Moreover, both the arbitrator and this Court are without authority to grant the relief that plaintiff requests. The Company's Dayton facility is a separate operation and its employees are represented by a separate bargaining unit. Pugh has no seniority rights in Local 654 and any order that the Company is to place him in a job ahead of persons with more seniority in that Local would be unenforceable. *See General Warehousemen & Helpers v. Standard Brands,* 579 F.2d 1282, 1293 (5th Cir. 1978); *Oddie v. Ross Gear & Tool Co.,* 305 F.2d 143 (6th Cir.), *cert. denied,* 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962).

We find finally that the question whether Pugh has a right to be transferred to the Dayton, Ohio facility is completely separate from the question of whether he was unlawfully terminated. As such, we do not believe it would be appropriate to remand the question to arbitrator Griffith. Both parties agree that the collective bargaining agreement between the Company and Local 100 contains a mandatory grievance procedure. Until Pugh and the Union exhaust this procedure, they have no right to have the matter decided by an arbitrator. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965).

For the reasons set forth above defendant's motion for summary judgment is granted and this case is hereby dismissed.

SO ORDERED.