**CHICAGO NEWSPAPER GUILD,**
Plaintiff-Appellee,

v.

**FIELD ENTERPRISES, INC.,
NEWSPAPER DIVISION,**
Defendant-Appellant.

No. 83–2737.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1984.

Decided Nov. 1, 1984.

Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff-appellee.

Gerald A. Golden, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant.

Before BAUER and FLAUM, Circuit Judges, and WYATT, Senior District Judge.[*]

FLAUM, Circuit Judge.

Appellant Field Enterprises, Inc. ("Field") appeals from the district court's order granting summary judgment to appellee Chicago Newspaper Guild ("the Guild") in a suit brought by the Guild on behalf of Franz Miller to enforce an arbitration award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). Field contends that it fully complied with the arbitration award ordering it to reinstate Franz Miller, notwithstanding the undisputed fact that Miller was never restored to active employment with Field, on the grounds that Miller would have been laid off from his employment with Field in 1978, prior to the arbitration award, had he not been discharged in 1977. The Guild argues that Field clearly did not comply with the arbitration award, and that Field cannot argue that Miller would have been laid off in 1978 as a defense to compliance with the arbitration award when it failed to present that argument to the arbitrator. For the reasons set out below, we affirm the district court's grant of summary judgment to the Guild.

## I. BACKGROUND

On January 31, 1977, Franz Miller was discharged by Field from his position as a part-time clerk in the communications center of Field's Newspaper Division. The communications center provided services to the staffs of both the *Chicago Sun Times* and the *Chicago Daily News*. Affidavit of

[*] The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

Gerald Minkkinen, dated June 16, 1982, ¶ 4. The Guild protested Miller's discharge by filing a grievance against Field, which was submitted to arbitration pursuant to the collective bargaining agreement between Field and the Guild.

On March 4, 1978, before any hearings on the grievance had been held, the *Chicago Daily News* ceased publication. Field laid off five hundred and fifty employees in March 1978, including at least one hundred and thirty-one full-time employees and at least eighty-one employees with greater seniority than Miller. Affidavit of Robert McAllister, dated November 20, 1979, ¶¶ 5, 8, 9. Field contends that Miller "would have been laid off from his employment with Field Enterprises as a result of the demise of the *Chicago Daily News* if he had been on the active payroll as of March 4, 1978." *Id.* ¶ 6. The Guild, however, points out that Miller did not work exclusively for the *Daily News*, and that the position of communications center clerk remained in existence following the closing of the *Daily News*. Minkkinen Aff. ¶ 6.[1]

On April 26, 1978, and July 17, 1978, arbitrator Robert G. Howlett held hearings on the grievance that the Guild had filed against Field on behalf of Franz Miller. At no time during these hearings did either party inform the arbitrator about the layoffs resulting from the demise of the *Daily News*. On November 24, 1978, the arbitrator issued an award directing Field to reinstate Miller immediately and awarding Miller backpay. Appendix of Appellant ("App.") at 17.

Field's response to the arbitration award was to send Miller a letter, dated December 22, 1978, in which Field "reinstated" Miller as of February 1, 1977 (the day after his discharge), placed him on layoff status as of March 7, 1978 (when Field contends he would have been laid off had he then been on the active payroll), and provided him with backpay from the date of his discharge to the date of his layoff ($7,075.17) along with accrued vacation benefits for the same period ($536.63) and certain other benefits which had been provided to other employees laid off in March 1978.[2] McAllister Aff. ¶ 10. In addition, Miller was placed on a rehire list along with all other employees laid off due to the closing of the *Daily News*. *Id.* ¶ 12. At no time following the arbitration award did Field permit Miller to return to work. Defendant's Response to Plaintiff's Request for Admissions, dated August 4, 1980, at 4.

The Guild filed the present suit against Field on August 22, 1979, seeking enforcement of the arbitration award. The parties filed cross-motions for summary judgment on December 5, 1979. Both motions were denied on January 22, 1980.

On December 19, 1980, the parties filed their second cross-motions for summary judgment. The district court initially granted Field's motion for summary judgment and denied the Guild's cross-motion on May 14, 1982. Upon the Guild's motion for reconsideration, however, the court vacated its earlier order, granted the Guild's motion for summary judgment, and denied Field's cross-motion for summary judgment. *Chicago Newspaper Guild v. Field Enterprises, Inc., Newspaper Division,* No. 79 C 3474 (N.D.Ill. Aug. 5, 1982). This appeal followed.

## II. ANALYSIS

The sole issue in this case is whether Field in fact complied with the arbitration award ordering it to reinstate Franz Miller.[3] Field's contention that it fully complied with the arbitrator's award is apparently based on a belief that the award

---

**1.** Although the communications center was closed in April 1979, all clerks then assigned to it were reassigned to other positions with Field. Most were reassigned as library clerks, the position Miller initially held when he started working for Field in 1973. Minkkinen Aff. ¶ 7.

**2.** These benefits included vacation pay ($178.88), contractual dismissal pay ($255.54), and enriched severance pay ($255.54). McAllister Aff. ¶ 11.

**3.** Field did not challenge the validity of the arbitration award at issue, nor did it seek to vacate that award.

required only that Miller be reinstated to the position he would have been in had there been no discharge. Coupled with its assertion that Miller would have been laid off in 1978 if he had not been unlawfully discharged in 1977, Field concludes that it complied with the arbitrator's award because Miller was "effectively reinstated and paid all benefits he would have earned from the date of his discharge (January 31, 1977), to the date he would have been laid off due to the cessation of publication of the *Daily News* (March 4, 1978)," i.e., restored to the position he would have been in had he not been discharged in 1977. Brief of Appellant at 9. Field's assertion of compliance must be rejected for three reasons. First, it is based on a clearly erroneous interpretation of the arbitrator's award. Second, even if we accepted Field's interpretation of the award, Field would be unable to prove that Miller would have been laid off in 1978 had he not been discharged in 1977. Finally, even if Field could establish that Miller would have been laid off in 1978, we would reject the argument because it was not presented to the arbitrator below.

■ A look at the plain wording of the arbitrator's decision reveals that Field simply did not comply with its clear mandate. The arbitrator's decision did not, as Field suggests, require Field to restore Franz Miller to the position he would have been in if he had not been previously discharged; rather, it plainly ordered Field "to return Employee Franz Miller to work at the beginning of the payroll period following receipt of this Opinion and Award." App. at 17.[4] It is undisputed that Field did not

return Miller to work at any time following receipt of the arbitrator's award. Field's retroactive "reinstatement" of Miller thus carried out the arbitrator's mandate *only* insofar as Miller received a fraction of the backpay he was due. We hold that because Field refused to return Miller to work at any time *following* the arbitrator's award, thus failing to reinstate him under the plain language of the award, Field did not comply with the arbitration award ordering it to reinstate Franz Miller.

■ Our holding that the arbitration award required Field to actually return Miller to the active payroll following the issuance of the award does not mean, as Field contends, that Miller has been granted perpetual job security. Once reinstated, Miller would be in the same position as any other employee of Field, and would be subject to any lawful disciplinary action, layoff, or discharge. Any future employment decisions affecting Miller would, of course, be evaluated independently of the present action. *See SEIU, Local 144 v. Metropolitan Jewish Geriatric Center*, 94 L.R.R.M. (BNA) 3151, 3152 (S.D.N.Y.1977) (finding compliance with arbitral order of reinstatement when employee lawfully discharged immediately after reinstatement); *Hellman v. Program Printing, Inc.*, 400 F.Supp. 915, 918 (S.D.N.Y.1975) (finding subsequent layoff of reinstated grievant to be new issue requiring separate grievance); *Detroit and Midwestern States Joint Board v. White Tower Laundry and Cleaners*, 353 F.Supp. 168 (E.D.Mich.1973) (finding subsequent transfer of reinstated employee to be separate grievable event).[5]

**4.** The wording of Arbitrator Howlett's award is what distinguishes this case from *Truck Drivers, Chauffeurs and Helpers, Local Union 100 v. Liquid Carbonic Corp.*, 562 F.Supp. 825 (S.D.Ohio 1983), a case relied on by Field. The arbitrator's award in *Liquid Carbonic* ordered the aggrieved employee "reinstated to his employment." *Id.* at 827. The court interpreted that reinstatement award as requiring the employer to restore the employee to the position he would have been in had he not been discharged, which was on layoff status. *Id.* at 828. We need not decide whether a simple order of reinstatement, such as was involved in *Liquid Carbonic*, is

capable of the interpretation given it by that court and urged here by Field, because the arbitrator's award in this case was more specific; it clearly ordered Field to return Miller to work following issuance of the award. This specific wording makes the *Liquid Carbonic* decision inapplicable to the instant case.

**5.** The rule that future employment decisions are to be evaluated independently of a reinstatement order may invite abuse by unscrupulous employers who reinstate an employee for a token period of time only and then take further questionable action against the employee. *See*

■ Even if we were to accept Field's contention that the arbitration award required only that Miller be restored to the position he would have been in had he not been terminated, we would reach the same result in this case because Field acknowledged at oral argument that it would be impossible to establish today that Miller would have been laid off in March 1978 due to the closing of the *Daily News.* According to Field, layoffs were not carried out on the basis of seniority, although seniority was one of the criteria used in certain individual cases.[6] Defendant's Response to Plaintiff's Request for Admissions at 3. Field admits that no document exists which specifically states "the actual criteria or standards used by Field to determine which employees were to be laid off as a result of the closing of the Chicago Daily News," *id.,* and also admits that most of the people who made personnel decisions for Field in early 1978 are no longer with the company.

In the absence of any supporting documents or other evidence, Field is forced to rely exclusively on the conclusory statement of Robert McAllister, Vice-President for Industrial Relations of the *Chicago Sun Times,* that Miller would have been laid off as a result of the demise of the *Daily News* if he had been on the active payroll as of March 4, 1978. McAllister Aff. ¶ 6. Because of this inability to prove that Miller would have been laid off in March 1978, Field is in no position to assert that its actions in this case restored Miller to the position he would have been in had he not been unlawfully discharged.

Lastly, we note that even if Field were able to prove that Miller would have been laid off in March 1978, we would not accept such an argument in this enforcement proceeding because it was not presented to the arbitrator below. The long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use the information as a defense to compliance with an adverse award. In *Mogge v. District 8, International Ass'n of Machinists,* 454 F.2d 510 (7th Cir.1971), for example, this court rejected an employer's argument that the arbitrator improperly ordered it to reinstate the aggrieved employee to a position which the employer claimed no longer existed when the employer failed to present the argument to the arbitrator. *Id.* at 513. The employer attempted to offer evidence that the collective bargaining agreement had expired, thus eliminating the employee's position, for the first time in the district court as a response to the plaintiff's motion for enforcement of the award, even though the evidence had been in existence at the time of arbitration. This court held that

> [s]ince the burden was on [the employer] to prove to the arbitrator that the contract had expired so that he could take this into consideration in fashioning a remedy, it may not now complain that the award is unjustified....

Having failed without cause to bring these extraneous matters to the arbitrator's attention, [the employer] may not

---

*Staffman's Organizing Comm. v. United Steelworkers of America,* 399 F.Supp. 102, 106 (W.D. Mich.1975) (noting tremendous chilling effect on employee grievants if aware that after enduring three years of contract grievance procedures and winning, they could be transferred to farthest region of district and be forced to start over again). Such abuse was not possible in this case, however, because Field was unable to label Miller's alleged layoff a separate grievable event by employing him for a nominal period of time after the issuance of the arbitration award and then laying him off; then, Field could not maintain the fiction that Miller was really laid off in March 1978. For an employer in the same situation as Field, see *Aluminum Workers*

*Int'l Union v. Chromalloy American Corp.,* 489 F.Supp. 536, 543 (N.D.Miss.1980) (finding no compliance with arbitral order of reinstatement when employer "simultaneously" and retroactively reinstated and discharged employee for absenteeism occurring prior to arbitration award).

6. This case can therefore be further distinguished from *Truck Drivers, Chauffeurs and Helpers, Local Union 100 v. Liquid Carbonic Corp.,* 562 F.Supp. 825 (S.D.Ohio 1983), in which layoffs were apparently carried out strictly on a seniority basis. *Id.* at 828; *see supra* note 4.

supplement the record at this late date. The national labor policy of encouraging private arbitration of labor disputes, because of its potential for expeditious disposition of these matters without resort to the courts, has been thwarted in this protracted case. To allow [the employer], after arbitration, to have the court supplement the record with information that was available at the time of arbitration would further undermine the very purpose of private arbitration. We have concluded that these matters were never properly preserved for appeal.

*Id. See also United Steelworkers of America v. Smoke-Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir.1981) (failure to raise certain claims before arbitrator waives them in confirmation proceeding), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1718, 72 L.Ed.2d 139 (1982); *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir.1971) (failure to object to arbitrator's bias in arbitration proceeding waives the objection on appeal), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *Washington-Baltimore Newspaper Guild v. Washington Post Co.,* 367 F.Supp. 917, 919 (D.D.C.1973) (failure to raise defense of set-off before arbitrator bars employer from asserting it to resist enforcement); *Automobile Mechanics, Local 701 v. Holiday Oldsmobile,* 356 F.Supp. 1325, 1328 (N.D.Ill.1972) (failure to raise issue of oral agreement between parties before arbitrator waives argument in enforcement proceeding).

An arbitrator's need to be informed of all pertinent information is no less crucial when formulating a remedy for an unlawful discharge as when substantively deciding whether an unlawful discharge occurred:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This

is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Thus, the arbitrator below should have been apprised of any available information bearing on the appropriate remedy to be devised in this case in the event he found that Miller was unlawfully discharged by Field. This certainly included any reasons why Miller could not be reinstated to his previous position. Although the first arbitration hearing was held more than a month after the *Daily News* ceased publication, however, and although Field had already decided it would retroactively lay off Miller if the arbitrator ordered reinstatement (Defendant's Response to Plaintiff's Request for Admissions at 1), neither party informed the arbitrator that Miller would have been subject to layoff had he not been discharged. Field cannot be allowed to have remained silent through the arbitration proceeding and when an adverse decision was handed down "complain of a situation of which [it] had knowledge from the first." *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir.1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972).[7] In order to preserve the efficiency and integrity of the arbitral process, therefore, Field is precluded from arguing in this enforcement proceeding that Miller's reinstatement is for any reason unfair or unjustified when Field failed to present any such arguments to the arbitrator below.

## III. CONCLUSION

We find that by failing to return Franz Miller to work at any time following the arbitration award ordering it to do so, Field failed to comply with the plain mandate of the arbitration award. Because the material issues of fact in this case are undisputed, we affirm the district court's grant of sum-

---

**7.** We find unpersuasive Field's excuses for failing to mention Miller's susceptibility to layoff to the arbitrator.

mary judgment to the Guild in this action to enforce the arbitration award.[8]

---

8. The sale of Field's Newspaper Division to the Sun-Times, Division of News Group Chicago, Inc. on January 9, 1984, raises certain questions concerning the availability of the reinstatement remedy in this case. The ability to reinstate Miller now rests with the Sun-Times, Division of News Group Chicago, which has not been for-mally designated a party to this lawsuit. Although we requested and received supplemental memoranda from the parties regarding the appropriateness of substituting parties in this case, we leave that determination and any other questions as may arise from the sale by Field of the Sun-Times to the discretion of the trial court.