**UNITED STEELWORKERS OF AMERICA, AFL–CIO, CLC, Plaintiff,**

v.

**DAYTON–WALTHER CORPORATION, MUNCIE DIVISION, Defendant.**

**Cause No. IP 85–722–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 3, 1986.

As Amended March 26, 1987.

**51**

Richard J. Swanson, Segal & Macey, Indianapolis, Ind., Rudolph L. Milasich, Jr., Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., James B. Robinson, Kircher and Phalen, Cincinnati, Ohio, for plaintiff.

Timothy P. Reilly, Taft, Stettinius & Hollister, Cincinnati, Ohio, Richard E. Parker, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendant.

### ENTRY

BARKER, District Judge.

This matter comes before the court on plaintiff's, United Steelworkers of America, AFL–CIO, CLC ("USWA"), and defendant's, Dayton-Walther Corporation, Muncie Division ("Company"), cross-motions for summary judgment concerning the enforcement of a labor arbitration award.

Based on the briefs of the parties, the affidavits, documents, and depositions attached thereto, the court now enters its findings of fact and conclusions of law. In accordance therewith, the court GRANTS USWA's motion for summary judgment and DENIES the Company's motion for summary judgment. The court also directs, pursuant to Fed.R.Civ.P. 54(b), entry of a final judgment for the USWA, finding no just reason for delay. The court's analysis is set forth in the attached Memorandum.

### Memorandum

The central issue in this case is whether the Company has complied with a labor arbitration determination which ordered the reinstatement of a discharged employee, Dan Priest, to an electrician's position. Before implementing the arbitrator's order of reinstatement, the Company requested

that Priest take a "return-to-work" physical examination. Priest failed the physical examination, and as a result the Company did not reinstate him to the electrician's position.

USWA claims that the Company's actions failed to comply with the arbitrator's award. USWA also argues that because the Company did not raise the issue of Priest's physical fitness or ability to perform an electrician's duties at any time during arbitration, such a defense to reinstatement should not be permitted and this court should enforce the arbitration award.

The Company claims that it attempted to reinstate Priest, but his physical condition prevented such action. Further, the Company argues that any dispute concerning Priest's failed physical examination raised a new, grievable issue which must be resolved through the grievance and arbitration procedures rather than in a federal district court. Finally, the Company states that USWA's filing of a grievance on behalf of Priest and its notification to the Company of its intention to appeal this grievance to arbitration support the Company's contention that a new, grievable issue resulted from Priest's failed physical examination.

The court has jurisdiction over the parties and the subject matter of the dispute pursuant to section 301 of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185.

### Background

The Company, an employer under the LMRA by virtue of its contract with the USWA, operates a facility in Muncie, Indiana, which manufactures truck wheels and other products for the heavy truck industry. USWA is a labor organization under the LMRA by virtue of its representation of the production and maintenance employees, including the electricians, employed at this facility. The Company and USWA were parties to a collective bargaining agreement which was in effect from August 1, 1982, through July 31, 1985. Article VIII of the agreement contained a grievance and arbitration procedure de-

signed to resolve any differences or grievances arising between the parties as to the meaning and interpretation of the provisions of the agreement. In applying Article VIII to this dispute, the Company and USWA have agreed that the decision of the arbitrator would be final and binding on the parties.

Dan Priest was hired by the Company as an electrician on May 21, 1979, and was laid off on August 28, 1981. The Company recalled Priest on June 14, 1983. Priest, however, was unable to return to work at that time because of a broken back. Priest completed the procedures, including the filing of papers, required under the collective bargaining agreement to place himself on a medical leave of absence. Because Priest did not return to work when recalled, his electrician position was properly posted and filled.

On or about November 28, 1983, Priest received from his physician a conditional work release which allowed him to return to work subject to certain restrictions on any lifting he might be required to perform. The Company, however, informed Priest that without an unconditional release he could not return to work. Priest then obtained from his physician an unconditional release. Thereafter, on November 29, 1983, the Company reviewed its plant-wide seniority list to determine which employees with lesser seniority, if any, could be "bumped" from their positions to allow Priest to return to work. Because there was no electrician with lesser seniority, including the employee who filled Priest's position, the Company offered Priest, as an alternative, the opportunity to "bump" into a laborer's position. Priest declined this offer, maintaining that he was not interested in any classification of work other than electrician.

On November 30, 1983, the Company informed Priest that, unless he accepted the laborer position, his seniority would be "terminated." In other words, Priest would have his seniority reduced to the level of a new employee and, as a result, he would not be entitled to "bump" less senior employees. The next day, December 1,

upon Priest's failure to accept a laborer position, the Company prepared a change of status sheet thereby purporting to terminate Priest's seniority. On December 7, 1983, when the Company posted a vacancy for an electrician's position and Priest attempted to "bump" into the job, the Company refused to allow him to do so because Priest's seniority had been terminated a week earlier.

Priest filed a grievance, protesting the Company's termination of his seniority. After proceeding through the established grievance procedures, Priest's grievance was submitted to arbitration. A hearing was held before Arbitrator Edwin R. Render on October 4, 1984. During the arbitration hearing, neither party raised any issue concerning Priest's physical fitness or ability to perform an electrician's job. Additionally, no evidence was adduced to show that the Company has a standard practice of requiring any employee who seeks to return to work from a medical leave of absence to submit to a physical examination. Arbitrator Render, however, was aware from the Company's brief that Priest had suffered a broken back and had been on a medical leave of absence for approximately six months. Arbitrator Render also knew from the brief that the Company had offered Priest the opportunity to "bump" into a laborer's position. On January 22, 1985, Arbitrator Render issued an award that read in full: "The Grievant [Priest] is ordered reinstated to an electrician position."

The Company then requested that Priest submit to a return-to-work physical examination before being reinstated. As a result of that examination, a thirty-pound-maximum lifting restriction was placed on Priest, and the Company did not reinstate him. Thereafter, the Company notified Priest by letter that he was on leave-of-absence status until his physical health improved or until his seniority expired under the terms of the collective bargaining agreement. On February 5, 1985, USWA filed a grievance on behalf of Priest contesting the Company's actions. Approximately three months later, on May 3, 1985, USWA informed the Company of its decision to appeal the Priest grievance to arbitration. USWA filed suit in this court on May 10, 1985.

## Analysis

■ National policy, as articulated by the Supreme Court in a series of 1960 decisions known as the *Steelworkers Trilogy*, favors the orderly resolution of labor disputes and grievances through arbitration when the parties have agreed contractually to be bound by the arbitrator's determination. *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int'l*, 548 F.2d 1288, 1293 (7th Cir.1977), *citing United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This national policy severely restricts the role of a federal court reviewing an arbitration award.

■ The scope of judicial inquiry is limited to a determination of whether the arbitration award "draws its essence from the collective bargaining agreement." *Amoco Oil Co.*, 548 F.2d at 1293–94. *See also Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180 (7th Cir.1985). If the arbitration award is derived from the language and context of the agreement, a federal court must enforce that award. The Supreme Court recently reaffirmed this position in *W.R. Grace & Company v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) wherein Justice Blackmun, writing for the majority, stated:

> Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.... A federal court may not overrule an arbitration decision simply because the court believes its own interpretation of the contract would be a better one.

*W.R. Grace & Company,* 461 U.S. at 764, 103 S.Ct. at 2182. So long as the award is based on the arbitrator's interpretation of the collective bargaining agreement, the award draws its essence from that contract and must be enforced. With this general principle in mind, the court addresses the parties' specific arguments.

Neither party disputes the fact that Arbitrator Render's award was reasonably based on the provisions of the collective bargaining agreement. The Company did not move to vacate the arbitration award within ninety days of its issuance and, consequently, concedes the validity of the award. There also is no dispute as to the interpretation of Arbitrator Render's award.

USWA claims that the only task for the court is to enforce the arbitration award requiring the reinstatement of Priest. The Company argues that it cannot reinstate Priest because his physical condition prevents reinstatement as an electrician. If USWA disagrees with the Company's decision not to reinstate, the Company further argues, USWA should process this new grievance through the contractual steps, including review by an arbitrator. The Company disputes that a federal district court is the proper forum in which to resolve this new issue.

■ The court finds that requiring USWA to proceed through another round of grievance and arbitration is unnecessary and would only further delay compliance with the original order of the arbitrator. Despite the Company's agreement to abide by the decision reached through arbitration, it has not done so. The actions taken by the Company after the issuance of the award, requiring Priest to submit to a return-to-work physical examination and subsequently, refusing to reinstate him, plainly disregard and directly contravene the arbitration award. Reinstatement means actually putting an employee back on the active payroll, returning the employee to a specific job, and allowing the employee to perform his work responsibilities. *Chicago Newspaper Guild v. Field Enter., Inc.,* 747 F.2d 1153 (7th Cir.1984); *Local 15062, Un-*ited Steelworkers of Am. v. Rocky Mountain Div. of Rockwool Indus.,* 467 F.Supp. 1132 (D.Colo.1979).

In *Chicago Newspaper Guild,* the issue before the court was whether Field, the employer, had complied with an arbitration award ordering it to reinstate Franz Miller, a discharged employee. Field's response to the award was to send Miller a letter in which Field "reinstated" Miller as of the day after his unlawful discharge, then to place Miller on layoff status effective one year later, and finally to pay him backwages for this one-year period. Field never actually placed Miller back on the active payroll or permitted him to return to work. The Court of Appeals for the Seventh Circuit held that Field had failed to reinstate Miller and thus, did not comply with the plain language of the arbitration award. Consequently, the Seventh Circuit ordered enforcement of the award. 747 F.2d at 1158.

In *Local 15062,* a labor union brought an action against an employer for allegedly refusing to abide by an arbitrator's decision ordering reinstatement. Rockwool did put the discharged employee back on the payroll and paid him the current salary of his job classification. The company, however, refused to allow the "reinstated" employee to perform his job duties until completing a physical examination. The federal district court, adopting the dictionary definition of reinstatement, "1: to place again (as in possession or in a former position) 2: to restore to a previous effective state," concluded that Rockwool, by not permitting Miller to actually return to work at his job, had failed to comply with the arbitration award ordering reinstatement. 467 F.Supp. at 1137–38 (quoting *Webster's New Collegiate Dictionary* (5th Ed. 1977)). Therefore, the court ordered enforcement of the award.

■ Using *Chicago Newspaper Guild* and *Local 15062* as a guide in the present situation, it is clear that the Company failed to comply with Arbitrator Render's award ordering Priest reinstated to an electrician position. Priest was never actually placed back on the active payroll, returned

to his job, or allowed to perform his work responsibilities. The Company conditioned Priest's reinstatement upon a successful completion of a return-to-work physical examination even though no such prerequisite was a part of the arbitration award.

■ Reinstatement to an electrician's position does not mean that Priest would have perpetual job security at the Company's Muncie plant. Once back at work, Priest would be in the same position as any other employee of the Company and would be subject to any lawful disciplinary action, layoff, or discharge. *Chicago Newspaper Guild,* 747 F.2d at 1156. Should Priest, for instance, be unable to perform his duties as an electrician, the Company could take the steps necessary to correct the situation. This subsequent Company action, of course, if controverted, would be evaluated independently of the present action. *Id.* (citing *SEIU, Local 144 v. Metropolitan Jewish Geriatric Center,* 94 L.R.R.M. (BNA) 3151, 3152 (S.D.N.Y.1977) (finding compliance with arbitral order of reinstatement when employee was lawfully discharged immediately after reinstatement); *Hellman v. Program Printing, Inc.,* 400 F.Supp. 915, 918 (S.D.N.Y.1975) (finding subsequent layoff of reinstated grievant to be new issue requiring separate grievance); *Detroit and Midwestern States Joint Bd. v. White Tower Laundry and Cleaners,* 353 F.Supp. 168 (E.D.Mich.1973) (finding subsequent transfer of reinstated employee to be separate grievable event)).

■ Finally, this court notes that the Company should not be permitted to raise, as a defense to reinstatement, Priest's poor physical health, when the Company completely failed to present this issue to the arbitrator. Not at any time during the hearing before Arbitrator Render on October 4, 1984, did the Company mention that Priest might be unable to perform, in a safe and satisfactory fashion the duties of an electrician, although recognizing even then that an employee who is not medically fit can be a danger to himself and his co-workers. As the Seventh Circuit recently noted:

The long-established federal policy of settling labor disputes by arbitration would be seriously undermined if parties kept available information from the arbitrator and then attempted to use this information as a defense to compliance with an adverse award.... An arbitrator's need to be informed of *all pertinent* information is no less crucial when formulating a remedy for an unlawful discharge as when substantively deciding whether an unlawful discharge occurred.

*Chicago Newspaper Guild,* 747 F.2d at 1157–58 (emphasis added). Although the Company did not know positively at the time of the hearing that Priest would not pass his return-to-work physical examination, since the Company did not require the examination until after the award was issued, the Company was well aware of the fact that Priest had suffered a very serious back injury, requiring a six-month medical leave of absence, which could affect his ability to perform an electrician's duties. Further, after accepting the unconditional work release from Priest's physician, the Company appeared willing to allow Priest to "bump" into a laborer's position without undergoing any type of return-to-work physical examination.

In order to reach a fair solution to this problem, Arbitrator Render should have been apprised of all available information bearing on the appropriate remedy to be devised. In the event that Arbitrator Render found that Priest should be reinstated, information concerning Priest's back injury could have resulted in some preconditions in the award prior to reinstatement. In addition, the Company, once it was notified of the arbitrator's decision, could have sought clarification, reconsideration, or modification, upon timely referral back to the arbitrator of the results of Priest's physical examination; but apparently no such action was taken. In order to preserve the efficiency and integrity of the arbitral process, the Company ought to be, and therefore is precluded from relief from the enforcement of the arbitrator's order on the ground that Priest's reinstatement is not possible.

*Conclusion*

The court finds that by requiring Dan Priest to submit to a return-to-work physical examination and, on the basis of those results, by failing to return him to work as an electrician following the arbitration award ordering reinstatement, the Company failed to comply with the plain mandate of the arbitration award.

■ For all of the foregoing reasons, the court GRANTS USWA's motion for summary judgment and DENIES the Company's motion for summary judgment. The court further finds that Priest is entitled to back pay at the regular rate of pay for an electrician for the period commencing January 23, 1985, the date he would have returned to work had the Company complied with the arbitration award, to and including the date of compliance with this order.[1]

USWA also argues that Priest is entitled to the legal rate of interest on the backpay from January 23, 1985, until he is reinstated to an electrician position. The court agrees that awarding interest on the backpay owed to Priest will serve to make him whole. *See Lucky Food Stores, Inc. v. United Food & Comm. Workers Union,* 575 F.Supp. 235, 237 (N.D.Ill.1983). *See also Oscar Mayer Foods Corp. v. Local 100,* 118 LRRM 2561, 2563 (N.D.Ill.1984) [Available on WESTLAW, DCT database] (granting interest on back wages awarded by the arbitrator) (citing *Meat & Allied Food Workers v. Packerland Pkg. Co.,* 411 F.Supp. 1280, 1284 (E.D.Wis.1976) ("In order to make the complaining employee whole, interest ... is to be granted.")). USWA's motion for interest on the backpay ordered from January 23, 1985, until the date of compliance with this Entry is granted.

■ Finally, USWA claims it is entitled to attorney's fees and costs because the Company's challenge to the arbitration award was without justification. Attorney's fees may be awarded if an employer's refusal to comply with an arbitrator's decision was in bad faith or frivolous. *Merit Ins. Co. v. Leatherby Ins. Co.,* 737 F.2d 580, 582 (7th Cir.1984). *See also Amoco Oil Co. v. Oil, Chem. & Atomic Workers,* 548 F.2d 1288, 1296 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). The court does not find that the Company's position was frivolous, in bad faith, or so wholly devoid of merit as to warrant the imposition of costs and fees. Accordingly, USWA's motion for attorney's fees and costs of suit is denied.

---

1. In accordance with the stipulation of the parties, the amounts to which Priest is entitled under the terms of the entry are: $21,738.32 in back pay for the period from January 22, 1985, through February 25, 1986; $712.48 in vacation pay; and interest at the legal rate.