**ARMCO EMPLOYEES INDEPENDENT FEDERATION, INC., Plaintiff–Appellant,**

v.

**ARMCO STEEL COMPANY, L.P., n/k/a AK Steel Corporation, Defendant–Appellee.**

No. 94–3186.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1995.

Decided Sept. 14, 1995.

David M. Cook (argued and briefed), Manley, Burke, Fischer, Lipton & Cook, Lori L. Freno-Engman, Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, for plaintiff-appellant.

William K. Engeman (argued and briefed), Taft, Stettinius & Hollister, Cincinnati, OH, for defendant-appellee.

Before: BOGGS and BATCHELDER, Circuit Judges; and QUIST, District Judge.*

BOGGS, Circuit Judge.

Plaintiff Armco Employees Independent Federation, Inc. ("the Union") sued Armco Steel Company ("Armco")[1] under § 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 and 28 U.S.C. §§ 1331, 1337, to enforce an arbitration award rendered pursuant to the parties' collective bargaining agreement. The district court adopted the report and recommendation of the magistrate judge and granted Armco's motion for summary judgment, concluding that it lacked jurisdiction because the Union was requesting relief beyond the scope of the arbitrator's award. For the reasons set forth below, we affirm.

I

Armco operates several steel manufacturing facilities in Middletown and Hamilton, Ohio. The Union is the exclusive collective bargaining representative for hourly maintenance and production workers, and it has represented Armco employees since at least 1943. The parties entered into a series of agreements that make up the Basic Agreement, a collective bargaining agreement that became effective on March 1, 1990, and continued until March 1, 1994.

This is not the first dispute between the parties over the terms of the collective bargaining agreement, nor is it their first resort to an arbitrator.

**The Initial Arbitration**

On June 6, 1991, February 11, 1992, and April 13, 1992, the Union filed separate grievances alleging that Armco failed to maintain the workforce levels guaranteed in the collective bargaining agreement. Article XXIII, § C, of the agreement states:

> For the duration of this Agreement, a guaranteed working force of 1570 Trade and Craft employees consisting of any combination of Apprentices or Journeymen, will be maintained in a Trade or Craft occupation subject to the following conditions:
>
> 1. Shipments of coated product must exceed 66,875 tons per month except that upon start-up of the Electrogalvanizing Line # 2, shipments must exceed 84,375 tons per month....

The Union claimed that Armco failed to maintain the required 1570 employees at times when the "trigger level" of 84,375 tons was exceeded. The parties also clashed over whether the Union itself could file a grievance under this provision as a representative of its members, what constituted "coated products," and whether the minimum staffing levels must be maintained over the life of the agreement.

After failing to resolve the dispute through other channels, on July 15, 1992, the parties entered binding arbitration as required by Article VII, § D of the Basic Agreement. On November 9, 1992, Arbitrator Terry A. Bethel rendered a lengthy decision in Armco Case No. 52–300–00295–92, concluding: "I will order the company to comply with Article XXIII, Section C by posting the appropriate openings when shipments of coated steel exceed the levels specified in Article XXIII." In arriving at this decision, Bethel resolved several preliminary issues. First, he defined what constituted "coated products" for purposes of the agreement. Second, he dismissed Armco's argument that Section C expired after the first time production dropped below the "trigger level." Last, he ruled that the Union could seek redress for a violation of the collective bargaining agreement on behalf of non-specified employees. Since an individual who is employed could not show personal injury resulting from Armco's failure to maintain proper staffing levels, he concluded that the Union could file a grievance in a representative capacity.

Bethel's opinion did not discuss the facts behind the alleged staffing shortfall, but in-

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

1. The company subsequently recapitalized in 1994 and changed its name to AK Steel Corpora-

tion. Since the parties' briefs, as well as the decisions below, refer to the defendant as Armco, we will retain this usage.

stead focussed on the language of the collective bargaining agreement. The decision was essentially a declaratory judgment interpreting Section C of the collective bargaining agreement. The arbitrator concluded:

> The grievance is sustained. Article XXIII, Section C requires that the company maintain 1570 craft employees during months in which its shipment of coated products exceed [sic] the levels specified in Article XXIII, Section C(1). The company will post the appropriate openings to comply with that provision. There was no showing in this proceeding of harm to any individual employee.

The Union contends in the current dispute that just two months after Bethel's decision, Armco twice violated the order by failing to maintain proper staffing during January and March of 1993.

### The Current Dispute

The Union charges that the trigger volume of 84,375 tons was exceeded in January and March of 1993, but that Armco employed only 1461 Trade and Craft ("T & C") employees in January and posted only 9 vacancies, and that in March, Armco employed 1451 T & C employees and posted only 52 vacancies.

On April 1, 1993, the Union filed suit in federal district court to enforce Bethel's award as it affects the alleged January and March shortfalls. The Union requested five forms of relief in its complaint:

A. An Order enforcing the Opinion and Award of ... Bethel dated November 2, 1992, and directing Defendant to fully and completely comply with that Award effective the date of the events grieved and at all times in the future;

B. An Order directing Defendant to identify those persons directly and adversely affected by the Company's failure and refusal to comply with [Bethel's] Award;

C. An Order ... that Defendant make whole ... each individual identified as having been directly and adversely af-fected by the Company's failure and refusal to comply ... with interest from the date of the Award or the date of actual loss ...;

D. An award of all costs and attorneys [sic] fees of this action as a result of Defendant's bad-faith failure and refusal to comply ...;

E. Such other relief as may be equitable....

*Complaint to Enforce Arbitration Award* at 5–6.

Armco challenges the Union's version of events and portrays this conflict as really being about Armco's unilateral creation, in July 1992, of a Mobile Maintenance Department ("MMD") without the Union's agreement. The Union unsuccessfully argued that establishment of this department violated the collective bargaining agreement, but the NLRB disagreed. The Union advised its members not to bid on positions at the MMD, and when openings were posted on February 22, and March 1, no bids were received for the thirty-two available positions. Armco offers copies of sixteen postings between November 9, 1992, and April, 5, 1993, and contends that if the Union had filled the total of all the jobs listed on those postings (165), they "would have resulted in manning by over 1570 trade and craft employees in [January and March]." Armco also argues that the Union's resistance to the MMD made posting the openings a futile act.[2]

Both parties moved for summary judgment and filed rebutting and supporting briefs, as well as a Joint Statement of Undisputed Facts. The case was referred to a magistrate judge who, after oral argument on the motions, recommended that summary judgment be granted for Armco and denied to the Union. The magistrate judge concluded that the Union's complaint "poses a new, previously unresolved dispute and seeks relief beyond a plain request for specific performance," so that the parties must submit this new dispute to arbitration, pursuant to the mandatory arbitration clause in the collective

---

**2.** The Union admits that it lobbied its members not to work in the MMD, but claims that it is irrelevant to Armco's duty to *post* the openings in compliance with Bethel's award. Only two of the sixteen postings were for work at the MMD.

bargaining agreement. Because federal courts may only enforce an arbitration award that "draws its essence from the collective bargaining agreement," and "are not authorized to reconsider the merits of an arbitration award," *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987), the magistrate judge recommended dismissing the suit because the district court lacked jurisdiction to provide the relief sought by the Union. On January 21, 1994, the district court adopted the magistrate judge's report and recommendation in full and granted summary judgment for Armco. The Union timely appeals.

## II

Case law clearly states that when parties select arbitration to settle their disputes, particularly in labor-management conflicts, district courts are not empowered to perform factfinding or second-guessing. Instead, courts have essentially one role—to place government authority behind an award in order to enforce it. The seminal case is *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), where the Supreme Court held that a district court exceeded its authority by reversing an arbitrator's award entered pursuant to a collective bargaining agreement. The Supreme Court held in *Misco* that an arbitrator's award is valid so long as it "draws its essence from the collective bargaining agreement," rather than being "his own brand of industrial justice." *Id.* at 36, 108 S.Ct. at 370 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

Federal courts have jurisdiction to enforce collective bargaining agreements, but where a labor agreement mandates arbitration, "courts must order resort to private settlement mechanisms without dealing with the merits of the dispute." *Id.* at 37, 108 S.Ct. at 370. "[C]ourts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Misco*, 484 U.S. at 37–38, 108 S.Ct. at 370. Further, "where it is contemplated that the arbitrator will determine remedies for contract violation that he finds, courts have no authority to disagree with his honest judgment in that respect."[3] *Id.* at 38, 108 S.Ct. at 371. By closely circumscribing the power of federal courts to review the merits of arbitration awards, the Court furthered the congressional policy favoring the settlement of disputes embodied in federal legislation regulating labor-management relations. *Id.* at 37, 108 S.Ct. at 370.

Applying *Misco* to this case, it is clear that an arbitrator, not a district court, is the proper entity to determine whether Armco truly exceeded trigger levels after the arbitrator's November 1992 award and whether it failed to post appropriate openings, despite Bethel's unambiguous award and interpretation of Section C of the collective bargaining agreement. The first arbitration award confirmed that Armco was obligated under certain circumstances to post the appropriate job openings, but there has yet to be a decision that this duty was triggered in early 1993 and that Armco has not fulfilled this responsibility. The Union contends that there were insufficient postings; Armco points to 165 openings listed over several months. However, there has been no factfinding by a court or an arbitrator concerning this matter; Bethel clearly could not have resolved this issue because his award predated this dispute by three months (and arose from three violations in 1991 and 1992). Until an arbitrator examines both the Un-

---

**3.** Of course, the parties may constrain the arbitrator's ability to fashion these remedies through explicit language in the collective bargaining agreement. *Misco*, 484 U.S. at 41, 108 S.Ct. at 372.

ion's and Armco's positions and reaches a conclusion, a district court may not supplant the parties' agreed-upon method of dispute resolution.

The cases offered as support by the Union are unpersuasive, as they involve the enforcement of awards *after a preliminary factual finding* of a *specific* violation. For example, the Union relies on *United Steelworkers of America v. Adbill Management Corp.,* 754 F.2d 138 (3d Cir.1985), where the Third Circuit held that a district court improperly remanded issues concerning Adbill's compliance with the arbitrator's award. Adbill fired nine maids for carrying handbags while working in guest areas of a hotel. Although an arbitrator found the maids clearly at fault, he ruled that suspension alone was the appropriate punishment and ordered the maids' immediate reinstatement. *Id.* at 140. Adbill did return them to its payroll, but promptly laid the maids off indefinitely, citing the hotel's low occupancy. The Union sued for enforcement of the award and for damages resulting from Adbill's failure to comply. The district court remanded the case to the arbitrator to determine whether Adbill had in fact reinstated the maids and if it had complied with the arbitrator's decision in good faith. *Ibid.* The Third Circuit reversed, holding that "reinstatement" was unambiguous and "clearly require[d] that the nine discharged maids be returned to actual duty." *Id.* at 142. The court then remanded the case to the district court for the assessment of damages arising from Adbill's noncompliance. *Ibid.*

The Seventh Circuit addressed another employer's failure to follow an arbitrator's order to reinstate a worker in *Chicago Newspaper Guild v. Field Enters., Inc.,* 747 F.2d 1153 (7th Cir.1984). The newspaper claimed that the employee would have been laid off with other workers when one of its two newspapers ceased publication, so it never reinstated him. *Id.* at 1154–55. The court rejected this excuse, citing the plain language of the award requiring the newspaper to return the employee "to work." *Id.* at 1156. Further, the court noted that even if the newspaper's explanation was plausible, the court could not consider it because it had not been presented below to the arbitrator, highlighting the arbitrator's role as the sole factfinder. *Id.* at 1157–58.

■ Both *Adbill* and *Chicago Newspaper* were lawsuits to enforce awards only after an arbitrator had *evaluated* the facts giving rise to a grievance, *identified* a violation in the case, and *ordered* a remedy tailored to the specific circumstances. In this case, no arbitrator or court has evaluated the circumstances of Armco's actions or omissions in January and March 1993, identified a specific violation, or ordered relief.[4] Although the arbitrator has previously concluded that a failure to maintain certain personnel levels would violate Section C of the collective bargaining agreement, this does not mean that Armco in fact violated the agreement in early 1993. In the absence of an arbitrator's award following all three steps outlined above, the district court would be in the position of performing a role assigned to an arbitrator by the collective bargaining agreement.

■ Moreover, the particular relief sought by the Union requires additional factfinding and analysis of issues, such as whether Armco actually posted the requisite number of openings mandated by the collective bargaining agreement, and who may have been harmed by a failure to comply. This factfinding must be done by an arbitrator, not by a court. Assuming a violation, the arbitrator can best determine whether Armco's failure was in bad faith and can decide

---

**4.** The dispute over whether the proper openings were posted for January and March of 1993 appears to be clear-cut and relatively easy to resolve: the record contains copies of the weekly job notices from November 9, 1992, to March 15, 1993, requiring only that a decisionmaker tally the pertinent job openings. Yet this factual clarity should not tempt a court to intervene, but instead means only that an *arbitrator* may have an easy decision. Generally, such simplicity is deceptive—in this case, there are a myriad of subissues: among others, whether the Union's lobbying rendered posting the openings futile; whether the notices were displayed in the proper location for a satisfactory length of time; whether Armco was required to hold the positions open for an entire month, or for some shorter period of time; and whether the company's count of postings constituted duplication.

what sort of damages or remedies are appropriate. The arbitrator will also be in the best position to identify those persons adversely affected by Armco's actions and is the only entity empowered to fashion a proper remedy. Finally, an arbitrator, not a court, can then decide whether the Union's attorney's fees should be paid by Armco. After such a decision, should Armco fail to carry out the edict of the arbitrator, the Union may then petition a court to enforce the award. If arbitration is to fulfill its purposes of avoiding judicial intervention and reducing the time and expense of dispute resolution, federal courts must limit their role in such matters to the supervision and enforcement of a valid award.

### III

We recognize that this case raises the specter of cascading violations, where one party could steadfastly insist that it has complied with an award as a means to avert enforcement by a district court. Conceivably, a party could try to create a factual dispute that prevents judicial enforcement simply by asserting that it in fact complied with an arbitrator's award. The recalcitrant party would claim that its alleged noncompliance constitutes a factual issue for an arbitrator, precluding district court jurisdiction. Then, after an arbitrator found noncompliance and the winning litigant sued in district court for enforcement, the other party could again claim that compliance with that finding is a factual issue for the arbitrator, thus repeating the cycle.

■■■ Though this scenario could conceivably cause a problem in some future case, it is not an insoluble dilemma, nor does it undermine our decision in this case. A court may enforce an arbitrator's clear and specific award.[5] What it may not do is adjudicate the merits of a contingent claim created by a past award. A court is able to distinguish an actual failure to comply with an award, which it is empowered to remedy, from, for example, a response whose adequacy in compliance with an award is ambiguous, and where the arbitrator must first make a decision. While there may be cases where this distinction will be difficult to draw, this case is not one of them.

The adequacy of Armco's action in response to the arbitrator's contract interpretation is genuinely in dispute, and an arbitrator, not a court, must first judge the matter. The judgment of the district court dismissing this case for a lack of jurisdiction is AFFIRMED.

---

5. The difficulty in this case is defining the arbitrator's initial award. Bethel's decision that the collective bargaining agreement required Armco to post certain job openings was essentially a declaratory judgment, and one which arose from the company's failure to maintain the requisite staffing three times in 1991 and 1992. However, Bethel's "award" was not his underlying conclusion that the contract imposed certain duties on Armco (and the rather obvious ramification that those duties must be fulfilled in the future), any more than "the parties must obey the terms of their contract" constitutes an award. An arbitration award must be sufficiently precise before a district court may enforce it, in that the arbitrator has identified a specific breach and, where requested, fashioned a remedy. Bethel's initial "award" was his finding that Armco had violated the collective bargaining agreement three times and that no individual employee was entitled to a remedy. Thus, a court's enforcement of *that* award would have little bearing on this dispute over workforce levels in January and March of 1993.