163 F.3d 403
 160 L.R.R.M. (BNA) 2065, 137 Lab.Cas. P 10,328
 AK STEEL CORPORATION, Plaintiff-Appellant/Cross-Appellee,
v.
UNITED STEELWORKERS OF AMERICA, Defendant-Appellee/Cross-Appellant.
UNITED STEELWORKERS OF AMERICA, Plaintiff-Appellant/Cross-Appellee,
v.
AK STEEL CORPORATION, Defendant-Appellee/Cross-Appellant.
 Nos. 96-4117, 97-3667.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 18, 1998.
Decided Dec. 22, 1998.
 
 William K. Engeman (briefed), Roger A. Weber (argued and briefed), John M. Stanton (briefed), Taft, Stettinius & Hollister, Cincinnati, Ohio, for AK Steel Corp. in Nos. 96-4117, 97-3667.
 James B. Robinson, Kircher, Robinson, Newman & Welch, Cincinnati, OH; Melvin P. Stein (argued and briefed), United Steelworkers of America, Pittsburgh, Pennsylvania, for United Steelworkers of America, AFL-CIO, CLC in No. 96-4117.
 Melvin P. Stein (argued and briefed), United Steelworkers of America, Pittsburgh, Pennsylvania, for United Steelworkers of America, AFL-CIO, CLC in No. 97-3667.
 Before: SUHRHEINRICH, CLAY, and OAKES,* Circuit Judges.
 PRELIMINARY STATEMENT
 OAKES, Circuit Judge.
 
 
 1
 The United Steelworkers of America ("USWA" or "Union") and AK Steel Corporation ("AK Steel" or "Company") both appeal from the district court's dismissal of their appeals from an arbitrator's oral order. The District Court for the Southern District of Ohio (Beckwith, Judge) dismissed AK Steel's action for vacatur of the arbitrator's award and dismissed the USWA's action to enforce the arbitrator's award against AK Steel. This court reverses the district court's dismissal of the USWA's action and affirms the district court's dismissal of AK Steel's action.
 
 BACKGROUND
 
 2
 AK Steel Corporation, successor to Armco Steel Company, operates steel mills in Ohio and Kentucky. The production and maintenance employees at the AK Steel factory in Middletown, Ohio ("Middletown facility" or "Middletown Works"), are represented by the Armco Employees Independent Federation ("AEIF"). The employees at the Ashland, Kentucky, steel mill are represented by the United Steelworkers of America.
 
 
 3
 The Kentucky employees under the USWA representation are covered by a collective bargaining agreement with AK Steel. This agreement includes a January 25, 1994, letter agreement ("Neutrality Agreement") that relates to the respective obligations of AK Steel and the USWA in the event of an affiliation campaign by the USWA to organize the unrepresented employees or to associate with the AEIF. Relevant portions of the Neutrality Agreement are reproduced in Appendix A.
 
 
 4
 In February 1994, the USWA began campaigning to secure representation rights over the AEIF-affiliated Middletown employees. The USWA lost the ensuing election and petitioned the National Labor Relations Board for a second election. The NLRB issued a decision directing that a new election be held, but the USWA and the AEIF had already begun productive discussions for a possible affiliation. Though AK Steel wished to re-open the hearing record from the NLRB re-election hearing, the USWA moved to withdraw its representation petition and waive its right to a new election. Shortly thereafter, in May 1995, the Executive Board of the AEIF tentatively approved the affiliation agreement with the USWA, subject to further approval and a ratification vote of the AEIF membership.
 
 
 5
 The USWA contends that AK Steel began in May 1995 to campaign against the USWA-AEIF affiliation vis-a-vis oral and written communications with AK Steel employees in violation of the Neutrality Agreement. AK Steel, in turn, maintained that it was relieved from its obligation of neutrality because the USWA violated its duty under the Neutrality Agreement not to demean AK Steel. The applicable section of the Neutrality Agreement, Section A, provides:
 
 
 6
 Neutrality means that the Company shall neither help nor hinder the Union's conduct of an organizing campaign, nor shall it demean the Union as an organization or its representatives as individuals. Also, the Company shall not provide any support or assistance of any kind to any person or group opposed to Union organization.
 
 
 7
 The USWA submitted this dispute to Seymour Strongin, the designated arbitrator under the USWA/AK Steel collective bargaining agreement, and Arbitrator Strongin held extensive hearings. Prior to proffering his decision and award, Arbitrator Strongin stated that "[t]he narrow issue raised by the Union for a decision is whether or not the Company violated Paragraph F of the January 25, 1994, Neutrality, Recognition and Affiliation Agreement." He then reiterated his ruling from earlier in the hearing that AK Steel "exceeded its right consistent with its neutrality obligation to communicate factually and fairly to employees within the meaning of subparagraphs 1 and 2 of Paragraph A," and he further held that AK Steel was not relieved from its neutrality commitment because it had not provided notice to the USWA that the USWA engaged in conduct violating the Neutrality Agreement.
 
 
 8
 He ordered that (1) AK Steel stop issuing communications to employees and engaging in any conduct in violation of the Neutrality Agreement; (2) AK Steel cease and desist from providing any type of assistance to any person or group opposing Union affiliation; and (3) AK Steel afford Union representatives access to the Middletown facility to distribute literature and comments consistent with AK Steel's obligations under the Neutrality Agreement in safe non-work areas during non-working time.
 
 
 9
 The USWA alleges that, almost immediately after the arbitrator issued his award, its representatives were denied access to the Middletown facility, and AK Steel's media campaign against them continued. The USWA filed an action in the United States District Court for the Western District of Pennsylvania and petitioned for enforcement of the arbitrator's award and a temporary restraining order to prohibit AK Steel from further violating the Neutrality Agreement and to permit access to the Middletown facility. AK Steel brought an action in the Southern District of Ohio to vacate the arbitrator's award, arguing that it was not enforceable both because it was prospective in nature and because the access portion of the award was not drawn from the essence of the Neutrality Agreement. AK Steel also made a motion to transfer the USWA's case from Pennsylvania to Ohio, and both actions were consolidated in the District Court in the Southern District of Ohio.
 
 
 10
 Both parties filed cross-motions for summary judgment, and the district court denied their motions and dismissed the actions. The district court ruled that the dispute was arbitrable, and the arbitrator could properly conclude that AK Steel was bound by the Neutrality Agreement because it did not provide notice to the USWA of its failure to comply with the Agreement. The district court rejected AK Steel's argument that the arbitrator exceeded his authority and his award was subject to vacatur, and the court found that the award "necessarily draws its essence from the neutrality agreement." The court held, however, that the arbitrator's award of access was directed toward unrepresented employees under Section B of the Neutrality Agreement, and, before making such an award, the arbitrator needed to have found a violation of Section B. Therefore, the district court agreed with AK Steel that the arbitrator's award was unenforceable under Armco Employees Independent Federation, Inc. v. Armco Steel Co. L.P., 65 F.3d 492 (6th Cir.1995), with respect to the access violations because the court could not address specific allegations not yet addressed by the arbitrator. The court also held, under Armco, that it could not address the USWA's complaints of continuing communications violations because the USWA presented no evidence to indicate that the actions at issue were continuations of the violations that the arbitrator prohibited. To the extent that they were new violations, occurring after the arbitrator issued his award, the court held that Armco prohibited judicial review until the arbitrator first addressed them.
 
 STANDARD OF REVIEW
 
 11
 Review of a district court decision that confirms or refuses to vacate an arbitration award is by the same standards used with other district court decisions. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Findings of fact are upheld unless "clearly erroneous" and questions of law are reviewed de novo. See id.
 
 DISCUSSION
 
 12
 The USWA contends that the district court erred in determining that the arbitrator's award of access to the Middletown facility addressed the unrepresented employees under Section B of the Neutrality Agreement. The USWA argues that the district court therefore further erred in holding that the arbitrator's award was unenforceable because the arbitrator did not find a violation of Section B prior to awarding the remedy. The USWA maintains that the arbitrator's award of access was instead directed toward the represented members of the Middletown AEIF, so the finding of a violation of Section B was irrelevant to the arbitrator's decision.
 
 
 13
 AK Steel contends that, if the award of access were to the represented employees, it would exceed the arbitrator's authority. AK Steel therefore argues that the district court improperly rejected its argument that the arbitrator's award under the Neutrality Agreement was subject to vacatur. AK Steel also maintains that it complied with the arbitrator's access mandates.
 
 A. Violation of the Neutrality Agreement
 
 14
 The arbitrator's finding that AK Steel communicated with employees in violation of the Neutrality Agreement is a finding of fact, only narrowly reviewable. See International Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth., 155 F.3d 767, 771 (6th Cir.1998). "[A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); see International Ass'n of Machinists, 155 F.3d at 771 (quoting United Paperworkers ). A court must only be satisfied that the record sufficiently supports the arbitrator's factual findings. See Mercy Memorial Hosp. Corp. v. Hospital Employees' Div. of Local 79, 23 F.3d 1080, 1084 (6th Cir.1994).
 
 
 15
 The arbitrator held a full hearing at which evidence was presented to indicate that AK Steel did violate its neutrality obligations. The arbitrator's determination to this end will therefore not be disturbed.
 
 
 16
 The arbitrator also determined that AK Steel did not comply with the notice language of Section A of the Neutrality Agreement, which would free it from its neutrality obligations in the event the USWA made misrepresentations to employees or conducted an improper campaign. The relevant portion of the Agreement provides that:
 
 
 17
 The Company's commitment to remain neutral shall cease if the Union or its agents intentionally or repeatedly (after having the matter called to the Union's attention) misrepresent to the employees the facts and circumstances surrounding their employment or conduct a campaign which comments on the motives, integrity or character of the Company or its representatives.
 
 
 18
 AK Steel, while apparently conceding that it did not give notice to the USWA before abandoning its neutral position, maintains that the notice language--"after having the matter called to the Union's attention"--required it only to give notice to the USWA in instances where AK Steel perceived that the USWA was misrepresenting to employees facts surrounding their employment and did not require it to inform the USWA that AK Steel perceived that it was conducting an impermissible campaign. AK Steel contends that the USWA would know when it was conducting an impermissible campaign, and notice would be needless in such cases. The arbitrator, however, interpreted the notice language to require AK Steel to inform the USWA that it believed the union was conducting an impermissible campaign. Therefore, in accordance with his interpretation, the arbitrator determined that since AK Steel did not give the USWA notice, AK Steel could not abandon its neutrality obligations.
 
 
 19
 When parties have contracted to have their disputes resolved by an arbitrator, the arbitrator's interpretation of the contract is afforded great deference by a reviewing court. See Dixie Warehouse and Cartage Co. v. General Drivers, Warehousemen and Helpers, Local Union No. 89, 898 F.2d 507, 509 (6th Cir.1990). Neither an appellate court nor a district court is at liberty to reject an arbitrator's construction of a contract, even if it is convinced that the arbitrator misread the contract, unless it is clear that the arbitrator ignored the plain language of the contract. See United Paperworkers, 484 U.S. at 38, 108 S.Ct. 364; Local 120, Int'l Molders & Allied Workers Union, AFL-CIO v. Brooks Foundry, Inc., 892 F.2d 1283, 1287 (6th Cir.1990).
 
 
 20
 The arbitrator determined that it would be unreasonable to assume that the USWA would require notice of AK Steel's perceptions of misrepresentations but not of AK Steel's perceptions of an impermissible campaign. The plain language of the notice provision does not preclude such an interpretation. The arbitrator's determination that AK Steel should have provided notice to the USWA of the perceived transgressions in order to free itself from its obligations under the Neutrality Agreement will not be disturbed.
 
 
 21
 AK Steel maintains that, immediately following the arbitrator's award, it provided notice to the USWA of AK Steel's perception that the USWA was in violation of the Neutrality Agreement. Assuming, arguendo, that this is true, it is irrelevant. The arbitrator determined that AK Steel was in violation of the Agreement and structured an appropriate award. AK Steel's subsequent actions cannot retroactively absolve the violations found by the arbitrator.
 
 B. The Arbitrator's Remedies
 
 22
 To remedy AK Steel's breach of its "contractual obligation to adopt a position of neutrality during the course of the affiliation campaign," the arbitrator held that:
 
 
 23
 Accordingly, AK Steel Corporation is directed to cease and desist from issuing communications, directions to employees, or engaging in any other conduct in violation of the Neutrality Agreement. The Company shall cease and desist from providing assistance of any kind to any person or group opposing union affiliation.
 
 
 24
 The Company shall afford Union representatives access to Middletown Works to distribute literature and comments consistent with its obligations under the Neutrality Agreement in safe non-work areas during non-working time. The Union's further requests for remedy are rejected at this time.
 
 
 25
 The district court interpreted this award to apply to unrepresented employees, and held that the arbitrator needed to have found a violation of Section B of the Neutrality Agreement, which pertains to access to unrepresented employees, before an access award could be made.
 
 
 26
 AK Steel contends that the district court correctly found that the arbitrator did not mandate access to represented employees, as such an award would exceed the arbitrator's authority and conflict with the express provisions of the Neutrality Agreement. The USWA argues that the district court incorrectly failed to enforce the arbitrator's award in full against AK Steel.
 
 
 27
 1. Represented Versus Unrepresented Employees
 
 
 28
 The district court incorrectly found that the arbitrator's access award and communication restraints addressed unrepresented employees. These remedies were directed at the represented employees, as is manifested by the context of the arbitrator's other statements. Only represented employees could vote on the affiliation proposal. Since the arbitrator found that AK Steel violated the Neutrality Agreement by communicating with those in opposition to the Union affiliation, those with whom AK Steel would have been communicating would have been those entitled to oppose the affiliation--namely, represented employees.
 
 2. Access Award
 
 29
 Review of an arbitrator's decision is very narrow--"one of the narrowest standards of judicial review in all of American jurisprudence." Lattimer-Stevens Co. v. United Steelworkers of Am., 913 F.2d 1166, 1169 (6th Cir.1990); see Bruce Hardwood Floors v. Southern Council of Indus. Workers, 8 F.3d 1104, 1107 (6th Cir.1993) (quoting Lattimer-Stevens ). An arbitrator has broad discretion in formulating remedies. See United Paperworkers, 484 U.S. at 38, 108 S.Ct. 364; International Ass'n of Machinists, 155 F.3d at 771-72. Though an arbitrator's award must draw its essence from the contract underlying the dispute, the award must be upheld even if the arbitrator is only arguably construing or applying the contract. See United Paperworkers International Union, 484 U.S. at 38, 108 S.Ct. 364; Eberhard Foods, Inc. v. Handy, 868 F.2d 890 (6th Cir.1989) (quoting United Paperworkers ). If the language of the arbitrable contract is not explicit enough to bar the arbitrator's chosen remedy, the arbitrator's judgment will be respected on review. See Local 120, International Molders, 892 F.2d at 1287.
 
 
 30
 The Neutrality Agreement does not provide remedies with respect to represented employees for violations by AK Steel of its neutrality obligations in affiliation proceedings. Section B, referred to by the district court, only applies to access to unrepresented employees and is not binding in assessing the arbitrator's award with respect to represented employees. Thus, the arbitrator's remedy of access to represented employees is not in conflict with any express provision of the Agreement.
 
 
 31
 The access remedy also does not contravene the essence of the Agreement. The Neutrality Agreement's essence is to keep AK Steel reasonably uninvolved in affiliation proceedings and to prevent its communication of misleading or incorrect information to employees. To the extent that the arbitrator awarded access to represented employees to allow the USWA to correct or counter information that AK Steel might have impermissibly communicated to the employees or to ensure that the USWA would have adequate access to represented employees to maintain a level playing field in the future in light of AK Steel's actions, the arbitrator permissibly constructed a remedy in accord with the essence of the Neutrality Agreement that he, in his broad discretion as an arbitrator, deemed appropriate.
 
 
 32
 AK Steel argues that an interpretation of the access award that would afford in-plant access to the represented employees would violate Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). AK Steel maintains that union access to represented employees must be bargained for under the Act, and the arbitrator's award of such is therefore unlawful and unenforceable.
 
 
 33
 AK Steel's argument has no basis in the law. The cases cited by AK Steel (e.g., N.L.R.B. v. Katz et al., 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); N.L.R.B. v. Unbelievable, Inc., 71 F.3d 1434 (9th Cir.1995)) prohibit unilateral action by parties under the duty to bargain collectively in situations where bargaining is mandated. This is a factually distinct situation from the one at hand where the "unilateral action" complained of is actually the remedy constructed by an authorized arbitrator.
 
 
 34
 3. Armco Employees Independent Federation, Inc. v. Armco Steel Co. L.P., 65 F.3d 492 (6th Cir.1995)
 
 
 35
 After determining that the arbitrator's award of access was directed at the unrepresented employees, the district court held that the arbitrator needed to have found a violation of Section B before awarding access as a remedy, and the district court held that Armco Employees Independent Federation, Inc. v. Armco Steel Co. L.P., 65 F.3d 492 (6th Cir.1995), therefore precluded it from entertaining the issue absent the arbitrator's specific finding. Inasmuch as we find that the district court's determination that the award was directed at the unrepresented employees is wrong, the district court's determination that the arbitrator needed to have found a Section B violation is now irrelevant. The district court's interpretation of Armco and its applicability should be addressed, however, as it is incorrect.
 
 
 36
 Armco involved a factually distinct situation. In an initial arbitration award in Armco, the arbitrator determined that the company had an obligation to post various job openings. However, the arbitrator did not then reach the issue of whether the company failed to post the openings in violation of its obligation. See Armco, 65 F.3d at 496. When the Union later brought suit to enforce the arbitration award, the magistrate determined that the federal district court was without jurisdiction because the arbitrator had not yet addressed the question whether the posting obligation was breached. Though the arbitrator had addressed previously what the posting obligations were, he had not yet specifically reviewed the merits of the alleged breach at issue. The district court adopted the magistrate's report and recommendation, and the Sixth Circuit affirmed. The Court of Appeals held that since there was no decision by the arbitrator as to whether the facts at issue created a violation of the agreement, a district court had no jurisdiction. See id. Moreover, after the arbitrator reviewed the conflict, the Court of Appeals noted that the district court would essentially have one role--"to place government authority behind an award in order to enforce it." Id.
 
 
 37
 In this situation, the arbitrator had already determined that AK Steel violated the Neutrality Agreement and rendered an award. The district court was called upon neither to determine whether there was a violation of the Agreement nor to fashion a remedy. Rather, the district court was asked to enforce the award against AK Steel. The arbitrator was in a position to address the complained of acts as he did. His findings as to AK Steel's violative communications and actions are sound, and his remedies were carefully crafted. That AK Steel continued to violate the Neutrality Agreement after the arbitrator issued his award does not make this situation factually similar to that in Armco. Rather, it makes all the more compelling the point that the district court should have rushed "to place government authority behind an award in order to enforce it." Id. We remand with that instruction.
 
 CONCLUSION
 
 38
 For the reasons set forth above, we reverse the district court's refusal to enforce the arbitrator's access award, and we affirm the district court's refusal to vacate the award.
 
 Appendix A
 
 39
 Portions of the January 25, 1994, Letter Agreement from Raymond W. Kelly, Jr., CoChairman, Negotiating Committee, on behalf of ARMCO Steel Company, to Jim Bowen, Director, USWA, District 23:
 
 A. Neutrality
 
 40
 Over the years, the Armco Steel Company, L.P. ("Company") and the United Steelworkers of America ("Union") have attempted to develop a constructive and harmonious relationship built on trust, integrity and mutual respect.
 
 
 41
 * * * * * *
 
 
 42
 To underscore the Company's commitment in this matter, it agrees to adopt a position of neutrality in the event that the Union seeks to represent any non-represented employees of the Company.
 
 
 43
 Neutrality means that the Company shall neither help nor hinder the Union's conduct of an organizing campaign, nor shall it demean the Union as an organization or its representatives as individuals. Also, the Company shall not provide any support or assistance of any kind to any person or group opposed to Union organization.
 
 
 44
 Consistent with the above, the Company reserves the right:
 
 
 45
 1. To challenge any issues relating to the scope and makeup of the unit sought by the Union through the Dispute Resolution procedure set forth below.
 
 
 46
 2. To communicate fairly and factually to employees in the unit sought concerning the terms and conditions of their employment with the Company and concerning legitimate issues in the campaign.
 
 
 47
 For its part, the Union agrees that all facets of its organizing campaign will be conducted in a constructive and positive manner which does not misrepresent their employment and in a manner which neither demeans the Company as an organization nor its representatives as individuals.
 
 
 48
 The Company's commitment to remain neutral shall cease if the Union or its agents intentionally or repeatedly (after having the matter called to the Union's attention) misrepresent to the employees the facts and circumstances surrounding their employment or conduct a campaign which comments on the motives, integrity or character of the Company or its representatives.
 
 B. Access to Company Facilities
 
 49
 Upon written request, the Company shall grant access to its facilities to the Union for the purpose of distributing literature and meeting with unrepresented employees. Distribution of Union literature at entrances and exits of facilities shall not compromise safety or disrupt access or egress.
 
 
 50
 * * * * * *
 
 F. Affiliation
 
 51
 The Company agrees that it will adopt a position of neutrality (as defined in Section A) in the event of a campaign to affiliate Armco Employees Independent Federation ("AEIF") with the Union. Should the members of AEIF vote to affiliate with the Union in conformance with the constitution or governing rules of that organization, the Company will recognize the Union as the collective bargaining representative of Company employees employed in the bargaining units currently represented by AEIF. In addition, the Company agrees that it will take no action to challenge such an affiliation.
 
 
 52
 * * * * * *
 
 
 
 *
 The Honorable James L. Oakes, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation