In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2952

GANTON TECHNOLOGIES, INC.,
d/b/a INTERMET RACINE PLANT
AND INTERMET RACINE MACHINING
OF RACINE, INC.,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, U.A.W.,
LOCAL 627,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-0587—**Rudolph T. Randa**, *Chief Judge.*

ARGUED JANUARY 16, 2004—DECIDED FEBRUARY 12, 2004

Before FLAUM, *Chief Judge,* and RIPPLE and ROVNER, *Circuit Judges*.

FLAUM, *Chief Judge.* Plaintiff-Appellant Ganton Technologies, Inc., ("Ganton") appeals the judgment of the district court upholding an arbitrator's decision in favor of International Union, United Automobile, Aerospace

and Agricultural Implement Workers of America, U.A.W.,
Local 627 ("the Union"). For the reasons stated below,
we affirm the judgment of the district court.

I.  Background

Prior to 1999, Ganton owned and operated two machin-
ing and die casting facilities in Racine, Wisconsin, and a
third in Pulaski, Tennessee. In December 1999, Intermet
Corporation ("Intermet") purchased all of Ganton's issued
and outstanding stock and Ganton became a wholly-owned
subsidiary of Intermet. Ganton continues to own and
operate its three facilities, although they now do business
as "Intermet Racine Machining", "Intermet Racine Plant",
and "Intermet Pulaski Plant."

The employees of the two Racine plants were repre-
sented by the Union both before and after Ganton became a
wholly-owned subsidiary of Intermet. On February 14,
2000, the parties executed a new collective bargaining
agreement entitled "Labor Agreement between Intermet
Racine Machining, Intermet Racine Plant and International
Union, United Automobile, Aerospace and Agricultural
Implement Workers of America (UAW) Local Union No.
627."

The collective bargaining agreement includes four terms
relevant to this litigation. The "AGREEMENT" provision,
which follows the preamble and precedes Article I, states
that:

> This agreement made and entered into this February
> 14, 2000 by and between INTERMET-Racine Plant and
> INTERMET Racine Manufacturing of Racine, WI (for-
> merly Ganton Technologies Inc. herein after [sic] re-
> ferred to as the Company), or its successors, and the
> International Union, United Automobile, Aerospace
> and Agricultural Implement Workers of America,

U.A.W., Local 627 (herein after [sic] referred to as the Union).

Other relevant terms include Article 5, Sections 1 and 2(b), which require the parties to submit unsettled grievances to arbitration, and Article 5, Section 3, which states that "[t]he decision of the arbitrator shall be final and binding upon both parties." Finally, the "PLANT WORK TRANSFER" provision, Article 15, Section 8, states that:

> The Company agrees that they will not move any production from its Racine facilities to any other Company owned facility, if such transfer of work results in any job losses in Racine.

This dispute arose in February 2000 when Ganton laid off employees from the Racine tool room and began to outsource new tool work to companies not owned by Ganton. In April 2000, the Union filed two grievances charging the "Company" with violating Article 15, Section 8, by improperly transferring "tooling work" and "production," and demanding that the tool work be returned to Local 627 Bargaining Unit employees. The parties were unable to resolve the grievances and the matter was submitted to arbitration.

In September 2000, the parties appeared before an arbitrator. The arbitrator phrased the issue before him as whether "the Company violate[d] Article 15, Section 8, of the contract when it outsourced tool room work from its Racine, Wisconsin, facility and, if so, what is the appropriate remedy?"

Neither party presented the definition of the term "Company" as an issue before the arbitrator. However, it was stipulated at the arbitration hearing that "Ganton Technologies was taken over and purchased by the Intermet corporation on December 20, 1999." In every brief submitted to the arbitrator by Ganton, the "Intermet Corporation" was indicated as the employer and the company.

Ganton did not clarify in any of its briefs that the company's identity was defined in the "Agreement" section of the collective bargaining agreement as "INTERMET-Racine Plant and INTERMET Racine Manufacturing of Racine, WI (formerly Ganton Technologies Inc. herein after [sic] referred to as the Company), or its successors." Ganton selected two other sections of the collective bargaining agreement, however, to highlight in its pre-hearing brief as the "relevant contract provisions" before the arbitator.

In its post-hearing brief, Ganton continued to represent itself as "Intermet." The brief states that "Intermet demonstrated that: (1) *not one piece* of tooling work that was in process at the Racine plant was transferred to any other **Intermet-owned** facility; (2) . . . the Company has the exclusive right to determine where new tooling work will occur, including the right to transfer some or all of that new tooling work to **non-Intermet-owned** companies . . . ." (Emphasis in original.)

The arbitrator found that he was unable to resolve issue presented without first determining whether "Company owned facility," as stated in Article 15, Section 8, referred only to those facilities owned by Ganton, or whether it encompassed all facilities owned by Ganton's parent company, Intermet Corporation. In concluding that "Company-owned facility" "means all of Intermet's facilities" (emphasis in original), the arbitrator noted that the Union "ratified the contract after Intermet purchased Ganton Technologies, Inc." (Emphasis in original.) The arbitrator found additional support for his conclusion in the preamble and front page of the collective bargaining agreement, both of which state that the agreement binds "Intermet-Racine Machining and Intermet-Racine Plant." However, it appears that the arbitrator did not consider the "Agreement" term that defines "Company", as the arbitration award does not reference or discuss that term.

Having determined that the scope of Article 15, Section 8, was not limited to Ganton's facilities, but rather included all facilities owned by Intermet, the arbitrator concluded that "the Company did in fact violate Article 15, Section 8, when it transferred . . . work to its other Company-owned facilities and when those transfers caused some or all of the job losses in the tool room." The arbitrator ordered Ganton to retransfer all work that had been transferred from the Racine tool room to other Intermet facilities and to recall all tool room employees who had been laid off or whose hours had been reduced because of the transfer. The arbitrator also forbade Ganton from transferring any future production work from the Racine facility if those transfers would result in future job losses or reduced work hours at the Racine tool room.

Ganton brought suit under 29 U.S.C. § 185 seeking to vacate the arbitration award on the ground that the arbitrator exceeded his authority by disregarding relevant provisions of the bargaining agreement, specifically, the definition of "Company" found in the "Agreement" term. The district court entered summary judgment in favor of the Union, holding that Ganton failed to properly present the argument to the arbitrator, and further that the arbitrator's decision reflected an interpretation of the collective bargaining agreement and therefore must be affirmed under the high degree of deference given to arbitral orders. Ganton now appeals.

## II. Analysis

Judicial review of an arbitrator's decision is limited. *Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 632 (7th Cir. 2003). The Court may not "consider the disputants' arguments afresh," *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997), nor may it overturn the arbitrator's decision on the ground that the arbitrator commit-

ted serious error. *Major League Baseball Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Rather, the role of the reviewing court is to determine whether the arbitrator's award "draws its essence from the collective bargaining agreement," *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960), and "only if 'there is no possible interpretative route to the award, so [that] a noncontractual basis can be inferred,' may the award be set aside." *International Truck and Engine Corp. v. United Steel Workers of Am., Local 3740*, 294 F.3d 860 (7th Cir. 2002) (quoting *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991)). Further, the "scope for a federal court to review tardy arguments is compressed still further, to nil." *Dean*, 118 F.3d at 1172.

Ganton argues that the arbitration award must be vacated because the arbitrator disregarded the definition of "Company" provided in the "Agreement" term of the collective bargaining agreement. The district court held that Ganton waived this argument because it did not present it to the arbitrator. We agree.

The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award. *See United Steelworkers of America, AFL-CIO-CLC v. Danly Mach. Corp.*, 852 F.2d 1024, 1027 (7th Cir. 1998) (stating that "it was incumbent upon [the employer] to raise all arguments . . . at the arbitration proceeding"). Arbitration would not be an efficient and cost-effective method of resolving labor disputes if federal courts indulged late arguments that were not brought to the attention of the arbitrator below. *See National Wrecking Co. v. International Broth. of Teamsters, Local 731*, 990 F.2d 957, 960-61 (7th Cir. 1993).

Ganton claims that, to preserve an argument for presentation in an enforcement proceeding, a party need only

present the information that underlies the argument at the arbitration proceeding. Ganton contends that it did not waive its argument regarding the definition of "Company" provided in the "Agreement" term because it adequately apprised the arbitrator of the argument by offering him a copy of the collective bargaining agreement, which included the "Agreement" term, as well as a copy of Ganton's response to the Union's grievance, which defined "company owned facility" as "the Pulaski, Tennessee facility." In support, Ganton cites *Chicago Newspaper Guild v. Field Enterprises, Inc.*, 747 F.2d 1153, 1157 (7th Cir. 1984) for the proposition that parties need only present "available information" to the arbitrator in order to preserve a defense to an adverse award.

In *Chicago Newspaper*, the union and employer appeared before an arbitrator to resolve a grievance that the union had submitted on behalf of a discharged employee. During the pendency of the arbitration, the employer laid off 550 employees, yet neither party informed the arbitrator of the layoffs. *Id*. at 1155. The arbitrator issued an award ordering the employee reinstated and paid back pay from the date of his wrongful discharge. *Id*. When the employer paid the employee only the back pay and benefits owed from the time period between the employee's discharge and the mass layoff, the union brought an enforcement action seeking reinstatement and the remainder of the back pay owed. *Id*. At the enforcement proceeding, the employer argued that it had fully complied with the award because the employee would have been terminated during the mass layoff. *Id*. at 1156. This Court found that the employer had waived its opportunity to present that argument because it had failed to apprise the arbitrator of the "available information bearing on the appropriate remedy." *Id*. at 1158.

That *Chicago Newspaper* holds that waiver is effectuated by failing to furnish pertinent information to the

arbitrator does not mean that the presentation of information, standing alone, is sufficient to avoid waiver. Rather, parties must "present . . . arguments to the arbitrator below" in order to avoid waiver. *Id.* at 1158. If, as Ganton suggests, the mere submission of the collective bargaining agreement, union grievance, and the employer's response to the grievance was adequate to preserve all arguments arising from the text of a collective bargaining agreement, then it would be impossible for this Court to find waiver in any enforcement proceeding. "Arbitration would just be the first of a series of steps that always culminated in court litigation, and it would lose its *raison d'être.*" *Butler*, 336 F.3d at 632.

That "Company," as defined in the "Agreement" term of the collecting bargaining agreement meant "INTERMET Racine Plant and INTERMET Racine Manufacturing of Racine, WI (formerly Ganton Technologies Inc. herein after [sic] referred to as the Company), or its successors" is not an argument that the arbitrator would have likely found on his own. Ganton obfuscated the issue in its prehearing brief by indicating that two other provisions of the collective bargaining agreement were the only "relevant contract provisions" to the resolution of the dispute. Ganton also misinformed the arbitrator by identifying the employer as "Intermet" and arguing in its post-hearing brief that no tooling work had been transferred to "any other **Intermet-owned** facility." (Emphasis in original).

Ganton concedes that its briefs to the arbitrator omitted any mention of the definition of "Company" or the "Agreement" term. Yet, Ganton argues that this omission was excusable because neither party believed the definition to be at issue. *See United Food & Commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister and Son, Inc.*, 950 F.2d 1340, 1344-45 (7th Cir. 1991) ("Of course, parties cannot be expected to anticipate every possible defense or datum that might influence an arbitrator's

award.") In this case, however, Ganton knew that the term was, in its words, "indispensable to any determination of whether Ganton violated the Agreement." Ganton had plenty of opportunities to present the argument and cannot now, having received an unfavorable ruling from the arbitrator, object to the award on the basis that the arbitrator ignored the definition of "Company" provided in the collective bargaining agreement.

## III. Conclusion

The district court's grant of summary judgment to the Union is AFFIRMED.

A true Copy:

  Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*